Hoge v. Norton.

LEMUEL G. HOGE, *et al.*, v. F. M. NORTON.

1. DISSOLUTION OF ATTACHMENT, *When Conclusive.* Where a motion is duly made to dissolve an attachment on the two grounds alone, that the allegations in the affidavit therefor are false, and that the case is not one in which an attachment may issue, and the district judge, upon proper notice and the hearing of the affidavits, dissolves the attachment, *held,* in an action upon the attachment bond, that this decision is conclusive, unless reversed by proceedings in error, that the attachment was wrongfully obtained.

2. ORDER OF ATTACHMENT, *Wrongfully Obtained; Compensation.* Where, under an order of attachment, cattle are taken and removed from the range where they have been kept, and placed in charge of a herder on a new range, where both grass and water are limited and poor, and owing to the removal and inferior care, fail to make the growth in weight which cattle kept as they had been during the winter would ordinarily during the time of such detention make, if left upon the range to which they were wonted, free from worry, and with the abundance of grass and good water which existed on the first-named range, *held,* that though they do not lose in weight during such detention, the failure to make the ordinary and expected increase in weight is a gain prevented, for which the owner is entitled to compensation, if the attachment was wrongfully obtained.

*Error from Osage District Court.*

AT the April Term, 1878, of the district court, *Norton,* as plaintiff in an action upon an attachment bond, recovered,

against defendants *Hoge*, as principal in said bond, and *Dolbe*, *Vancil*, *Hoover*, and *McCullough*, as his sureties thereon, a judgment for $468 damages, and for costs. The facts are fully stated in the opinion. The defendants bring the case to this court.

*James Rogers*, and *E. M. Sanford*, for plaintiffs in error.

*Ellis Lewis*, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action on an attachment bond, in which judgment was recovered against the plaintiff in the attachment and the sureties on his bond. The first question of importance is, as to the effect of the ruling of the district judge on the motion to dissolve the attachment. The motion was sustained, and the attachment dissolved, and the contention of defendant in error is, that such ruling is conclusive that the attachment was wrongfully obtained. The condition of the bond was, to pay damages "if the order therefor be wrongfully obtained." The contention of the plaintiffs in error is, that the mere fact that the attachment was discharged, does not prove that it was wrongfully obtained. *Non constat*, but that the discharge was on account of some informality or technical defect, and that in such a case the attachment could not justly be said to have been wrongfully obtained; that these words imply a want of actual merit in the attachment, the existence of a state of facts which forbids such a summary seizure of property, and that this is a question of fact which must go to a jury for decision.

It appears from the record in this case, that a motion was duly made to vacate and discharge the attachment; that such motion was based upon only two grounds — first, that the allegations in the affidavit therefor were untrue; and, second, that the plaintiff's petition did not justify the attachment. The notice specified that the motion would be heard upon affidavits, and the order of the judge recites that affidavits were presented, and his decision thereon is, that the "attach-

ment ought not to be sustained." Now, upon the record it appears that the decision was based upon the merits, for whether the case were one in which no attachment could issue, or the statements in the affidavit therefor were false,. the attachment was in fact wrongfully obtained. We have,. therefore, a decision made upon the merits, and not upon any mere irregularity or technical defect, and not a dissolution by the voluntary dismissal of the plaintiff. In such a case, we are of the opinion that the decision by the judge is conclusive. This is not an action for maliciously suing out an attachment, in which case want of probable cause is an essential factor, but a mere action on the bond for a wrongful attachment. (*McLaughlin v. Davis,* 14 Kas. 168.) And the single question is, whether the attachment was in fact wrongful, or in other words, whether the facts existed upon which an attachment might be issued; and the determination of this question the statute places with the judge or court. The decision thereon is open for review,. by proper proceedings in this court; but unless brought to this court for reëxamination, the decision of the lower tribunal is a finality. It is unnecessary to consider what result would follow, if the record disclosed a dissolution by the voluntary dismissal on the part of the plaintiff, or upon the ground of some technical defect or omission in the papers, or whether it is competent to show by parol testimony that the order of discharge was based upon some ground other than the merits. No such question is in the record. All that is presented is,. whether, after an order of dissolution made according to the record upon the merits, the matter may be again examined as an original question in an action on the bond upon oral testimony before a jury; and this question we are constrained to answer in the negative. We know that it is often said that the decision of a motion is not regarded in the light of *res adjudicata.* In the case of *White-Crow v. White-Wing,* 3. Kas. 276, it was held, that the decision of a motion to set aside a sale of real estate "either way would not affect the ultimate rights of the parties, nor be a bar to an action to

1. Dissolution of attachment, when conclusive.

determine which was the owner." And in *Benz v. Hines,*
3 Kas. 390, it was decided that the doctrine of *res adjudicata*
is not applicable generally to motions in the course of prac-
tice: While not disposed to question the correctness of those
decisions, we think this is a case in which the decision of
the motion is conclusive upon the exact questions embraced
within the motion. The exact question presented is clearly
stated in the motion. Under our practice, full opportunity
is given for the examination and consideration of the ques-
tions, and the decision is open to review in the appellate
court; and to permit the question to be retried, simply because
in an action on the bond the party has a right to a jury, seems
useless and wrong. It exposes to this possible result: After
a full hearing of the testimony and full consideration, the
district court decides that the attachment was wrongfully
obtained, and vacates it. On error, this court affirms its
decision. In a subsequent action, the same testimony is pre-
sented to a jury, and its verdict is, that the attachment was
not wrongful. There being a disputed question of fact and
testimony on both sides, the district court feels bound by the
verdict, and this court cannot do otherwise than affirm it.
Upon the same testimony, therefore, the only difference being,
that in the one case it is presented to the tribunal by affidavit
or deposition, and in the other orally, this court is compelled
to affirm that the attachment was both rightfully and wrong-
fully obtained. Or again, if the decision of the motion to
vacate the attachment is not conclusive when it is sustained,
it cannot be when it is overruled. In the latter case, the
property may be sold under the attachment, and the proceeds
applied in the satisfaction of the judgment, (and under our
practice the attachment is merely ancillary to the action, and
the rendition of a judgment in favor of the plaintiff in no
manner determines the rightfulness of the ancillary proceed-
ing,) and all this affirmed in this court, and still the plain-
tiff, and the sureties on his bond, be mulcted in damages in
an action on the bond given to support an attachment which
has never been dissolved, and which the records of the highest

court in the state show has been declared valid. In reference to this matter, we shall quote from Freeman on Judgments, § 325, as expressing our view:

"The reasons for holding such decisions (*i. e.,* decisions upon motions) not to be conclusive in a regular suit, were in an early case in New York stated to be, because 'it is a fact, well known, that such motions do not admit of that grave discussion and consideration as questions arising on demurrer, in arrest of judgment, or for a new trial. Again: Decisions on summary application can never be thrown into the shape of a record, and become the subject of review in any other court.' It will be seen that the reasoning of the court in this case (*Simson v. Hart,* 14 Johns. 75), which seems to be a leading American case upon the subject, is inapplicable to those motions which admit of 'grave discussion and deliberation,' and are capable of 'being thrown into the shape of a record,' and being the 'subject of review in another court.' In New York, the decision of a motion, notwithstanding the general declarations to the contrary frequently made, may be *res judicata.*"

In support of this, the author cites the case of *Dwight v. St. John,* 25 N. Y. 203, in which case the decision of a motion to have certain judgments canceled and discharged of record as satisfied, was held conclusive in a subsequent action, on the ground that the matter was heard upon full proofs, and that the proceeding was liable to review in the appellate court; and the author then concludes: "From this decision we may infer that in New York, if not in other states, the decision of a motion is as final and conclusive as the decision of a trial, if the proceedings permit of a full hearing upon the merits, and the order made is liable to review in some appellate court." See also, *McCullough v. Clark,* 41 Cal. 298; *Langdon v. Raiford,* 20 Ala. 532; *Noble v. Cope's Adm'rs,* 50 Pa. St. 17; *Second Ward Bank v. Upman,* 14 Wis. 596; *U. P. Rly. Co. v. McCarty,* 8 Kas. 132; *Mitchell v. Mattingly,* 1 Metc. (Ky.) 237. With this view of the conclusiveness of the ruling on the motion to vacate the attachment, we think the petition must be held sufficient as against any objection raised for the first time on the trial, and by objection to the

introduction of any testimony. (*Barkley v. The State,* 15 Kas. 99.)

The only other question we deem necessary to notice is that of damages. The property attached was a herd of cattle, and one of the items of damage as returned by the jury was the loss in the growth of the cattle, caused by the seizure and improper care while under seizure. It appears that the cattle were taken by the sheriff from the range where they had been kept for some time, and placed in charge of a herder on another range; and it is claimed that by reason of such change, and the inferiority of the new range, both in grass and water, the cattle failed to increase in weight as they otherwise would. The jury answered that they did not depreciate any in value, but that they did not grow as they would if they had not been removed; and this loss of expected growth is said by the one side to be mere matter of anticipated profits, which cannot be made the subject of award, and by the other to be actual and legitimate damages. It is not always easy to draw the line between profits that are a legitimate element of compensation, and those that are too remote, contingent or uncertain. The old idea that profits were never recoverable, was long since exploded; and now, even in actions on contract, it is said that they may be recovered when proximate and certain. "The general rule is, that the party injured by a breach of contract is entitled to recover all his damages, including gains prevented as well as losses sustained, provided they are certain and such as might naturally be expected to follow the breach. It is only uncertain and contingent profits therefore which the law excludes." (*Griffin v. Colver,* 16 N. Y. 489.) Now it appears from the testimony that cattle kept through the winter as these cattle were, do not ordinarily during such time increase any in weight, but are in good condition for summer feeding, and if kept where they are wonted, and free from worry, and where grass and water are abundant and good, will during the summer months gain in weight about a certain amount; that during the time when the increase in weight is expected, these cattle were driven away to a

new range, exposed to worry, and where both water and grass were limited and inferior; and at the end of their detention they were returned to the owner, not, it is true, deteriorated in value or lessened in weight, but without having made the ordinary increase in weight and value. It is a case of gain prevented, rather than of loss sustained, and the questions are, whether such gain prevented is proximate and certain — i. e., directly the result of the removal and inferior care — and the amount thereof susceptible of reasonably certain measurement. Both these questions the jury, by their verdict, answered in the affirmative, and we cannot say that the testimony did not fully warrant the answers. Of course, absolute certainty is not attainable, as in casting up the figures of an account; but nevertheless there are certain laws of feeding and growth, well understood among cattle-men, and whose results work out with sufficient certainty for business calculations and judicial investigations. The raising of cattle for market has been an extensive and ofttimes profitable business in this state; and it would be strange if one could wrongfully take from the owner a herd of cattle, remove them to a poorer range, feed them on inferior food, and so treat them that during the growing season they do not grow at all, and then at its end return them, saying, as did the unfaithful servant in the parable who returned the single talent without increase, "Lo! there thou hast that is thine," and still be under no liability to respond in damages to such owner.

2. Order of attachment wrongfully obtained; compensation.

We do not think the law so deficient. It seems clear that the owner is damaged, that the damages may be determined to a reasonable certainty, and that the wrong-doer is bound to make good the damages.

In *Sewall's Falls Bridge v. Fisk*, 3 Foster (N. H.), 171, it appeared that the plaintiff's toll-bridge was carried away through the fault of defendants, and the loss of tolls during the time reasonably necessary to rebuild was adjudged one element in the damages recoverable. In *Lacour v. The Mayor, &c.*, 3 Duer, 406, the plaintiff's manufactory was in-

jured, and compelled to stop running, through the fault of the defendant, and the profits which would have been realized during the period of necessary suspension were recovered.   See also, *James v. Adams*, 8 W. Va. 568; *Hanover R. R. Co. v. Coyle*, 55 Pa. St. 396; *Penn. R. R. Co. v. Butler*, 55 Pa. St. 335; *Penn. R. R. Co. v. Dale*, 76 Pa. St. 47; *Albert v. B. S. R. R. Co.*, 2 Daly, 389; *Moore v. Schultz*, 31 Md. 418; *Lawson v. Price*, 45 Md. 123; *Sturgis v. Frost*, 56 Ga. 188; *Morey v. King*, 49 Vt. 304.

As this item of damages was recoverable, it was a matter of proof, and we think the testimony offered to prove it legitimate and competent.   One or two questions may be open to criticism, but we see no error therein sufficient to justify a reversal.

The judgment will be affirmed.

All the Justices concurring.